COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Annunziata and Overton
Argued at Richmond, Virginia

NATIONAL NURSE SERVICES/ATLIS HEALTH
 SERVICES, INC. AND FIDELITY &
 CASUALTY INSURANCE COMPANY
                                    MEMORANDUM OPINION[*] BY
v.  Record No. 1451-96-2          JUDGE JAMES W. BENTON, JR.
                                        JANUARY 7, 1997
DONNA PATRICIA SWAN


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Ruth Nathanson (Midkiff & Hiner, P.C., on
            brief), for appellants.

            Gerald G. Lutkenhaus for appellee.


     On this appeal, National Nurse Services/Atlis Health

Services, Inc. and Fidelity & Casualty Insurance Company, jointly

designated "the employer," contend that the commission erred in

finding (1) that the employer was not justified in terminating

Donna Swan from selective employment and (2) that Swan adequately

marketed her residual capacity.  Because the commission's

findings are supported by credible evidence, we affirm the award.

                              I.

     The following is the well established standard of appellate

review from decisions of the commission:

            We do not retry the facts before the
            Commission nor do we review the weight,
            preponderance of the evidence, or the
            credibility of witnesses.  If there is
            evidence or reasonable inference that can be
            drawn from the evidence to support the

---

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

> Commission's findings, they will not be
> disturbed by this Court on appeal, even
> though there is evidence in the record to
> support contrary findings of fact.

Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d

507, 510-11 (1983).

> The following principles are also well established:
> When a disabled employee is discharged from
> selective employment, the "inquiry focuses on
> whether the [employee's] benefits may
> continue in light of [her] dismissal."  An
> employee's workers' compensation benefits
> will be permanently forfeited only when the
> employee's dismissal is "justified," the same
> as any other employee who forfeits her
> employment benefits when discharged for a
> "justified" reason.
>
>     A "justified" discharge (one which
> warrants forever barring reinstatement of
> workers' compensation benefits) does not
> simply mean that the employer can identify or
> assign a reason attributable to the employee
> as the cause for his or her being discharged.
>  Whether the reason for the discharge is for
> "cause," or is "justified" for purposes of
> forfeiting benefits must be determined in the
> context of the purpose of the Act and whether
> the conduct is of such a nature that it
> warrants a permanent forfeiture of those
> rights and benefits.  "[T]he Commission . . .
> must be mindful of the purposes and goals of
> the" Act.

Eppling v. Schultz Dining Programs, 18 Va. App. 125, 128, 442

S.E.2d 219, 221 (1994) (citations omitted).  "The reason for the

rule is that the wage loss is attributable to the employee's

wrongful act rather than the disability."  Timbrook v. O'Sullivan

Corp., 17 Va. App. 594, 597, 439 S.E.2d 873, 875 (1994).

Debbie Vaughters, the employer's human resources manager,

testified that Swan was terminated on March 19, 1995, after Vaughters received information in a written report that Swan had been verbally abusive to a patient at a mental hospital. Swan denied that she was terminated on that date and also that she verbally abused the patient. Swan testified that when she was attempting to give medication to a mental patient who had a history of injuring other nurses, the patient repeatedly lashed out at her, "slinging his shirt like he wanted to physically hit [her] with it." Swan further testified that she met with Vaughters on May 9, 1995, and Vaughters indicated that she would investigate the incident. Swan testified that on June 1, 1995 she received a telephone call from the employer offering her a work assignment.

The commission accepted Swan's testimony and made the following findings:

> The record reflects that, after November 17, 1994, [Swan] was released to light duty and continued to work in that capacity with her preinjury employer. It is axiomatic that, where an employer withdraws an offer of light work without justification, the employee is entitled to resumption of temporary total disability benefits. Here, we find that the employer withdrew its offer of light work on March 19, 1995. After that date, the employer gave [Swan] no further assignments and paid her no further salary. Further, we find that the withdrawal of the offer of light work was not justified. There is no evidence before us that the seven clients who requested that [Swan] not be assigned to their case did so because of her misconduct. Neither does the evidence establish that she was verbally abusive to a patient on March 19, 1995, the asserted basis for her termination. Contradictory evidence

was presented on this point.

These findings are supported by credible evidence in the record.  Accordingly, we uphold the decision that Swan's dismissal for misconduct was not proved to be justified.

II.

"A disabled employee with residual marketable capacity who claims entitlement to benefits for total work incapacity must prove that he or she has made a reasonable attempt to procure work, but has been unable to market his or her remaining work capacity."  The Greif Co. v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).  In reviewing the commission's finding that Swan made a reasonable effort to market her residual capacity, we must consider the evidence in the light most favorable to the finding of the commission.  See Wood v. Virginia Employment Comm'n, 20 Va. App. 514, 517, 458 S.E.2d 319, 320 (1995).

> The commission made the following findings:
> From March 19 through April 23, 1995, [Swan]
> contacted ten potential employers and
> submitted four applications for employment.
> We find this effort sufficient to meet [her]
> duty to market.  On April 24, 1995, [Swan]
> obtained part-time employment as a
> babysitter, earning $60 per week.
> Thereafter, [she] continued her marketing
> efforts, efforts which we also find adequate.

In addition to Swan's testimony detailing her search for employment, the record contains an exhibit that supported her testimony.  The exhibit, which was introduced at the evidentiary

hearing, listed the entities that Swan contacted for employment. That evidence provides credible support for the commission's findings.

Accordingly, we affirm the commission's award.

<u>Affirmed</u>.